SECOND DIVISION

February 8, 2000 

           

       

No. 1-99-1015

CHRISTINA ROSENBERG, as Special ) Appeal from

Administrator of the Estate of ) the Circuit Court

PASQUALE SANTANIELLO, Deceased, ) of Cook County

)

Plaintiff-Appellant, ) 

)

) Honorable

) Lester Foreman

ZURICH AMERICAN INSURANCE COMPANY, ) Judge Presiding.

)

Defendant-Appellee. )

JUSTICE GORDON delivered the opinion of the court:

In October 1996, Pasquale Santaniello, while a pedestrian, was struck by an automobile driven by an uninsured motorist and died subsequently from his injuries.  At the time of the accident, Santaniello resided at the Hillcrest Retirement Village (Hillcrest) and Hillcrest maintained an automobile insurance policy with defendant Zurich American Insurance Company that included uninsured motorist coverage of up to $1 million per accident.  In August 1997, plaintiff Christina Rosenberg, as special administrator of Santaniello's estate, filed a negligence and wrongful death complaint against the driver of the vehicle.  In August 1998, plaintiff filed an amended complaint for 
declaratory judgment against defendant seeking $1 million in compensation for Santaniello's injuries and death under the uninsured motorist policy defendant maintained with Hillcrest.  

In September 1998, upon defendant's motion, the trial court dismissed plaintiff's complaint with leave to amend.  In November 1998, plaintiff filed her second amended complaint for declaratory judgment seeking the same relief.  In February 1999, the trial court granted defendant's motion to dismiss plaintiff's complaint with prejudice for failure to state a cause of action on the basis that Santaniello was not covered by Hillcrest's uninsured motorist policy with defendant.  735 ILCS 5/2-615 (West 1998).  Plaintiff now appeals.  We affirm.

BACKGROUND

On October 22, 1996, Santaniello was a pedestrian crossing a roadway in Lake County when an automobile driven by Robert E. Pauley struck him.  Three weeks later, Santaniello died.  In her complaint against Pauley, plaintiff alleged that Pauley had negligently failed to avoid hitting Santaniello and had wrongfully caused Santaniello's death.  Pauley did not have automobile insurance at the time of the accident.

At the time of the automobile accident, Hillcrest maintained a business automobile insurance policy as a corporation with defendant.  The policy provided for automobile liability insurance, including uninsured motorist coverage, for the policy period of November 30, 1995, to November 30, 1996, with a limit of $1 million per accident.  The policy and attached endorsement provided for uninsured motorist coverage as follows:

"We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'  The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident'.  The owner's or driver's liability for these damages must result from the ownership, maintenance[,] or use of the 'uninsured motor vehicle'."

The policy endorsement defined an "insured" for the purposes of uninsured motorist coverage, in pertinent part, as follows:   

"1.  You.

 2.  If you are an individual, any 'family member.'"

The endorsement further defined a "family member" as "a person related to you by blood, marriage[,] or adoption who is a resident of your household, including a ward or foster child."  The policy declarations identified only Hillcrest, a corporation, as the named insured.  Only one vehicle, a Dodge Maxi-Wagon, was listed on the policy's schedule of covered automobiles.

According to her amended complaint for declaratory judgment against defendant, plaintiff made a $1 million claim against the uninsured motorist policy Hillcrest maintained with defendant to compensate Santaniello's estate for his medical costs, suffering, and ultimate death.  Defendant denied the claim, stating Santaniello could not receive benefits unless his injuries resulted from a collision involving the particular automobile covered by its policy with Hillcrest.  Plaintiff alleged in her complaint that Pauley was an uninsured motorist within the meaning of the insurance policy and that the policy could also apply to a Hillcrest resident struck as a pedestrian by an uninsured motorist.  

In her second complaint, plaintiff further alleged that, among other things, (1) Santaniello was a resident "family" member of Hillcrest pursuant to the Nursing Home Care Act (210 ILCS 45/1-122 (West 1996)); (2) Hillcrest provided Santaniello with boarding and all personal services; (3) Santaniello had listed Hillcrest as his place of residence on his voter's registration; (4) Santaniello had his public aid and social security checks sent directly to Hillcrest and drew only a small monthly allowance from Hillcrest; and (5) Santaniello relied upon the transportation Hillcrest provided with the insured vehicle to travel to appointments, entertainment, and other places outside the retirement village.  Defendant moved to dismiss plaintiff's second amended complaint on the basis that Hillcrest was a corporation and, therefore, by law could not have family members, preventing the extension of coverage to any such "family members", or, in this case, individuals residing at Hillcrest. 

In dismissing the complaint with prejudice, the trial court stated that to find in favor of plaintiff would "unquestionably be rewriting the insurance contract between the insured and the insurer".  The trial court also found that to accept plaintiff's construction of the policy would mean there would be "no end" to the extension of similar policies.  This appeal followed.

ANALYSIS

In reviewing a trial court's granting a defendant's motion to dismiss a complaint, this court must regard the plaintiff's well-pleaded facts and their reasonable inferences as true.  
Illinois Central Gulf R.R. v. Continental Casualty Co.
, 132 Ill. App. 3d 310, 312, 476 N.E.2d 1266, 1268 (1985).  The construction of an insurance policy is a question of law subject to 
de
 
novo
 review.  
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479-80, 687 N.E.2d 72, 75 (1997); 
Whiting v. Prestige Casualty Co.
, 238 Ill. App. 3d 376, 377, 606 N.E.2d 397, 398 (1992).  

On appeal, plaintiff argues that (1) the policy Hillcrest had with defendant was ambiguous and should be interpreted to cover Santaniello as a Hillcrest "family member" in light of the "unique" living arrangement Santaniello had at Hillcrest; (2) Santaniello was a "ward" of Hillcrest and, therefore, a "family member" as described by the policy; and (3) public policy favors providing coverage to Santaniello in this case.  Defendant counters that (1) Hillcrest was covered under the policy as a corporation and corporations cannot have family members as a matter of Illinois law; (2) the policy issued to Hillcrest was unambiguous and cannot be construed to cover Hillcrest residents; and (3) Santaniello would not qualify as a "family member" of Hillcrest, even if the insurance policy could be construed to extend to Hillcrest "family members".

A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement.  
American States
, 177 Ill. 2d at 479, 687 N.E.2d at 75; 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992).  To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purpose of the entire contract.  
American States
, 177 Ill. 2d at 479, 687 N.E.2d at 75; 
Outboard Marine
, 154 Ill. 2d at 108, 607 N.E.2d at 1212.  If the terms of the policy are clear and unambiguous, they must be given their "plain, ordinary, and popular meaning."  
American States
, 177 Ill. 2d at 479, 687 N.E.2d at 75; 
Outboard Marine
, 154 Ill. 2d at 108, 607 N.E.2d at 1212.  Conversely, if the terms of the policy are susceptible to more than one meaning, they are to be considered ambiguous and will be construed strictly against the insurer who drafted the policy.  
American States
, 177 Ill. 2d at 479, 687 N.E.2d at 75; 
Outboard Marine
, 154 Ill. 2d at 108-09, 607 N.E.2d at 1212.

On its face, the policy issued to Hillcrest by defendant is unambiguous in not including Santaniello as an insured.  First, in describing who is an "insured", the policy states that it extends to "family members" only if the insured is an "individual".  The policy declarations specifically describe Hillcrest as a "corporation" and not as an "individual".  This appears to preclude plaintiff from even arguing that Santaniello qualifies as a "family member" covered by Hillcrest's policy.  The fact that the policy mentions "family members" does not in itself render the policy ambiguous because the record shows that the policy forms are specifically designed so the "named insured" can be either an "individual", a "partnership", or a "corporation", and the policy language states that "family members" are covered only when the named insured is designated as an "individual".    

Moreover, as defendant notes, Illinois law has specifically stated that corporations cannot have family members.  See 
Economy Preferred Insurance Co. v. Jersey City Construction, Inc.
, 246 Ill. App. 3d 387, 392, 615 N.E.2d 1290, 1293-94 (1993), citing 
Polzin v. Phoenix of Hartford Insurance Cos.
, 5 Ill. App. 3d 84, 283 N.E.2d 324 (1972) (corporations cannot and do not have family members).  Therefore, if Hillcrest is in fact a corporation as the insurance policy states, plaintiff cannot make a claim under this policy on behalf of Santaniello.  
Economy
, 246 Ill. App. 3d at 392, 615 N.E.2d at 1293-94. 

Plaintiff argues that Hillcrest is not a regular corporation as described by 
Economy
 because it is a long-term care facility that provided for all of Santaniello's living needs and personal care and, therefore, had a "unique" relationship with Santaniello that would permit extending insurance coverage to Santaniello under the policy in question.  Plaintiff argues that given these "special" circumstances, this court should not just look at the language in the policy and its endorsements but at other circumstances that might have been considered when the parties drew up this policy.  See 
Illinois Gulf R.R.
, 132 Ill. App. 3d at 313, 476 N.E.2d at 1268, citing 
Glidden v. Farmers Automobile Insurance Ass'n
, 57 Ill. 2d 330, 336, 312 N.E.2d 347 (1974), ("'[a]n insurance policy is not to be interpreted in a factual vacuum; it is issued under given factual circumstances.  What at first blush might appear unambiguous in the insurance contract might not be such in the particular factual setting in which the contract was issued'").

Plaintiff urges that the fact that Hillcrest is a retirement and assisted living facility for elderly residents should be considered to render Hillcrest's policy with defendant ambiguous, despite the fact that Hillcrest is listed as a corporation on the insurance policy.  Plaintiff notes that Hillcrest residents rely on Hillcrest for the essentials of everyday life, including food, shelter, transportation, and fiduciary duties, including insurance.  Plaintiff also notes that some residents, such as Santaniello, turn over their entire public aid and social security checks to Hillcrest in return for Hillcrest providing for them "as if it were the head the residents' own household."  Plaintiff argues, in essence, that this situation renders Hillcrest residents "family members" of Hillcrest and Hillcrest not a real "corporation" but a special entity caring for these "family members."

Plaintiff further urges that because of the "unique" arrangement, this court should review the matter as a case of first impression and look to decisions from other jurisdictions for guidance.  See 
Jaime v. Director, Department of Employment Security
, 301 Ill. App. 3d 930, 935, 704 N.E.2d 721, 725 (1998) (with a case of first impression, it is "instructive" to look at decisions of foreign jurisdictions that have considered this issue); see also 
Litman v. Monumental Life Insurance Co.
, 289 Ill. App. 3d 181, 186-87, 682 N.E.2d 135, 139 (1997) (stating the same).  Plaintiff has cited several such cases for our consideration, which we discuss in turn.  

The first case, 
Ceci v. National Indemnity Co.
, 225 Conn. 165, 622 A.2d 545 (Conn. 1993), involved a situation where the plaintiff, a pedestrian struck by an automobile driven by an underinsured motorist, sought underinsured motorist benefits under a business automobile policy issued to a corporation wholly owned by his brother.  In the policy at issue, under a heading entitled "WHO IS INSURED", the policy first listed: "1.  You or any family member."  
Ceci
, 225 Conn. at 171, 622 A.2d at 548.  In construing the policy to cover the plaintiff's claim, the Connecticut Supreme Court found that by inserting the "family member" provision into the contract the insurer had, in effect, rendered the contract ambiguous enough to the corporation holding the policy to require that the plaintiff be permitted to make a claim under the policy.  
Ceci
, 225 Conn. at 175, 622 A.2d at 550.  The court stated that the insurer in this case could have either clarified or omitted the "problematic" language to better inform the policyholder what the coverage actually provided.  
Ceci
, 225 Conn. at 175, 622 N.E.2d at 550.

However, unlike the policy in 
Ceci
, the policy in the case at bar clearly states that "family members" are only taken into account if the insured is an "individual," and does not leave any ambiguity as to whether the "family members" provision might also apply to corporations as well.  See 
Ceci
, 225 Conn. at 171, 622 A.2d at 548 (quoting language of policy, which did not make this distinction).  As the policy in this case is unambiguous, the "plain" interpretation of its language, even if we accepted 
Ceci
 as guidance, would still lead us to conclude that Hillcrest's policy with defendant did not include coverage for any "family members."  
American States
, 177 Ill. 2d at 479, 687 N.E.2d at 75; 
Outboard Marine
, 154 Ill. 2d at 108, 607 N.E.2d at 1212.

The plaintiff also cites 
Hansen v. Ohio Casualty Insurance Co.
, 239 Conn. 537, 687 A.2d 1262 (Conn. 1996), where the Connecticut Supreme Court found that shareholders and employees of a closely-held corporation, including plaintiff's decedent--a co-owner of the corporation struck and killed by an underinsured motorist while on vacation, were entitled to underinsured motorist benefits under the uninsured motorist endorsement of a garage insurance policy issued to the corporation by the defendant.  In this case, the policy description of who was insured was identical to the language of the policy in the case at bar.  
Hansen
, 239 Conn. at 540, 687 A.2d at 1264 (section designated "WHO IS AN INSURED" states: "1. You.  2.  If you are an individual, any 'family member.'").  The court found that this provision, in the context of the policy language, might permit a layperson to conclude that the "You" in the policy in question was also referring to the shareholders of the family-owned and operated corporation, rendering the policy ambiguous enough in essence to require coverage of such people.  
Hansen
, 239 Conn. at 544, 687 A.2d at 1265.

Hansen
 is factually distinguishable from the instant case, in that the record does 
not show Santaniello to have been either a shareholder or employee of Hillcrest.  Moreover, contrary to 
Hansen
, we find that the simple inclusion of the phrase "family member" does not in itself render the policy ambiguous.  The policy as issued is clearly designed to be used both in the case of "individuals" and in the case of "corporations", such as Hillcrest.  The plaintiff here and the court in 
Hansen
 appear to be arguing, in effect, that defendant is required to issue separate policies to "individuals" and "corporations" in order to avoid the possibility of any ambiguity.  We find, 
that the language of the policy in the case at bar unambiguously permits the inclusion of "family members" as "insureds" under the policy only when the "insured" is designated 
to be an "individual" and not a "corporation", and, moreover, regardless of 
Hansen
, Illinois law does not permit Hillcrest as a corporation to have or claim automobile insurance coverage for any purported "family members"
.
  
American States
, 177 Ill. 2d at 479, 687 N.E.2d at 75; 
Outboard Marine
, 154 Ill. 2d at 108, 607 N.E.2d at 1212; 
Economy
, 246 Ill. App. 3d at 392, 615 N.E.2d at 1294.

The only case plaintiff cites in specific support of its contention that its "unique" circumstances should qualify Santaniello for insurance coverage is 
Thattil v. Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.
, 415 Mass. 381, 613 N.E.2d 908 (Mass. 1993).  In this case, the defendant insurer had issued an automobile insurance policy that included underinsured motorist benefits to the Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc., a nonprofit religious corporation and a religious order within the Roman Catholic Church.  
Thattil
, 415 Mass. at 382-83, 613 N.E.2d at 909.  Pursuant to the canon law of the Catholic Church, sisters in the Dominican Order were required to "renounce the right to the disposition and to the free use of material goods."  
Thattil
, 415 Mass. at 383, 613 N.E.2d at 909.  Anything a sister might receive, from salaries to gifts, had to be remitted to the Order.  
Thattil
, 415 Mass. at 383, 613 N.E.2d at 909.  Sister Thattil, a member of the Dominican Sisters of Charity of the Presentation of the Blessed Virgin, was struck by an automobile driven by an underinsured motorist while walking near her residence.  
Thattil
, 415 Mass. at 383, 613 N.E.2d at 909.  She sought underinsured motorist benefits under the Order's policy with the defendant, and the defendant denied her claim, stating she had to have been riding in one of the automobiles covered by the policy to receive benefits under the policy.  
Thattil
, 415 Mass. at 383, 613 N.E.2d at 909.

In finding for Sister Thattil, the Supreme Judicial Court of Massachusetts stated that the defendant insurer's interpretation of its policy with the Dominican Sisters ignored the "unique circumstances" under which the sisters lived and contravened Massachusetts  statute concerning underinsured and uninsured motorists, which was enacted to protect the named insured and "all household members" injured or killed by such motorists, "whether such accident victims are occupants of a motor vehicle or pedestrians."  
Thattil
, 415 Mass. at 387-88, 613 N.E.2d at 991-912.  The court found that Sister Thattil's vows precluded her from owning an automobile or purchasing underinsurance coverage on her own behalf, meaning the only policy under which she could obtain such coverage was that issued to the Dominican Sisters as the named insured.  
Thattil
, 415 Mass. at 388, 613 N.E.2d at 912.  The court stated that Sister Thattil had "merged her identity" with that of the Order and that identity should not be ignored because the policy described the insured in its corporate form.  
Thattil
, 415 Mass. at 388, 613 N.E.2d at 912.

Thattil
 is not analogous to the case at bar.  We first note that the Illinois statute pertaining to uninsured motorist coverage does not specify that pedestrians must be included in underinsured and uninsured motorist coverage as Massachusetts statute does (see 215 ILCS 5/143(a) (West 1998)), and the record does not demonstrate that Santaniello's arrangement with Hillcrest resembled that of Sister Thattil's with the Dominican Sisters.  Hillcrest was not a religious order onto which its residents "merged" their identities but a private retirement home where residents received room, board, and other services in exchange for payment to Hillcrest and were otherwise free to do as they wished.  Even though Santaniello turned over his public aid check and social security checks to Hillcrest, he did so as payment for the services Hillcrest provided him and was not, as the sister in 
Thattil
, required to surrender his assets, let alone take a vow of poverty.  Moreover, the record does not demonstrate that 
all
 members of the retirement village were on public aid like Santaniello rather than expending private funds for their care but only that the bulk of Santaniello's own care was paid for through his public aid checks.  Santaniello's living arrangement with Hillcrest did not preclude him from purchasing extra insurance coverage or protection, as Sister's Thattil's membership in the Order did in 
Thattil
.  Therefore, 
Thattil
 is not dispositive in this case and does not prompt us to in turn construe the policy in question as providing coverage to Santaniello.

Plaintiff next argues that Santaniello was legally a "ward" of Hillcrest and, therefore, covered under its "family member" provision.  Plaintiff offers as guidance cases from other states construing whether particular individuals were wards of a particular organization for the purpose of automobile insurance coverage.  See 
Carrington v. St. Paul Fire & Marine Insurance Co.
, 169 Wis. 2d 211, 485 N.W.2d 267 (Wis. 1992) (finding children who, as wards of the state, were residing at a residential treatment center licensed as a child welfare agency were wards of this youth home and covered as named insureds under the home's automobile insurance policy); 
Hartman v. Insurance Co. of North America
, 106 Mich. App. 731, 308 N.W.2d 267 (Mich. App. Ct. 1981) (mentally incompetent adult residing in a private group living facility operated for profit is ward of the facility and named insured under an automobile policy issued to the group living facility).  We find these cases do not apply here.

A ward has been defined in Illinois as "[a] person, especially an infant, placed by authority of law under the care of a guardian" (
In re Jennings
, 68 Ill. 2d 125, 132, 368 N.E.2d 864, 868 (1977), citing Black's Law Dictionary (4
th
 ed. 1951)), or, comparably, "the person over whom or over whose property a guardian is appointed."  
Jennings
, 68 Ill. 2d at 133, 368 N.E.2d at 868, citing 39 C.J.S. Guardian & Ward §2 (1976).  Plaintiff does not contend, nor does the record show, that Santaniello was placed by authority of law under the care of Hillcrest as his guardian, even if Santaniello turned over his public aid check to Hillcrest.  Moreover, unlike the facts in 
Carrington
 or 
Hartman
, Santaniello was not legally disabled, in his minority, or in any way under the guardianship of another individual or entity, let alone the state of Illinois, so as to meet the legal definition of a ward.  
Jennings
, 68 Ill. 2d at 132-33, 368 N.E.2d at 868.  Furthermore, as we stated earlier, plaintiff has failed to show the policy in dispute was ambiguous in not including "family member" coverage to Hillcrest residents, meaning even if Santaniello could theoretically be considered a ward of Hillcrest, the policy would not insure him in this case. 
 American States
, 177 Ill. 2d at 479, 687 N.E.2d at 75; 
Outboard Marine
, 154 Ill. 2d at 108, 607 N.E.2d at 1212 (when insurance policy is unambiguous, plain meaning of language applies).   

Still, plaintiff further argues that public policy supports extending uninsured motorist coverage to Santaniello in order to adequately compensate him for his injuries.  Plaintiff cites that applicable Illinois statute, which states such coverage is intended to:

"[protect] persons injured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness[,] or disease, including death, resulting therefrom."  215 ILCS 5/143(a) (West 1998).

Plaintiff also points out that the legislative purpose of this legislation is to ensure those individuals injured by uninsured or underinsured motorists are compensated as though the offending motorist had been appropriately insured.  See 
Luechtefeld v. Allstate Insurance, Co.
, 167 Ill. 2d 148, 152, 656 N.E.2d 1058, 1061 (1995) (purpose of uninsured motorist statute is to place the insured policyholder in substantially the same position he would occupy if the uninsured driver had been minimally insured); 
Bruno v. State Farm Mutual Auto Insurance, Co.
, 220 Ill. App. 3d 641, 646, 581 N.E.2d 16, 19 (1991) (intent of legislature in enacting uninsured motorist coverage statute is to protect an insured generally against injuries caused by motorists who are uninsured).  We agree that the courts are obliged, as plaintiff argues, to ensure that individuals insured by uninsured motorist policies receive that coverage when injured by uninsured motorists.  However, as we have already determined, the language of the policy at issue does not extend uninsured motorist coverage to Santaniello and existing case law does not support providing such an extension.  Thus, we cannot, on public policy considerations, extend coverage to Santaniello to which he is not entitled.  
American States
, 177 Ill. 2d at 479, 687 N.E.2d at 75; 
Outboard Marine
, 154 Ill. 2d at 108, 607 N.E.2d at 1212; 
 Economy
, 246 Ill. App. 3d at 392, 615 N.E.2d at 1294. 

Finally, plaintiff argues that the specific arrangement that Hillcrest had with Santaniello is factually distinguishable from the situations in 
Economy
 and 
Polzin
, as both cases involved disputes over whether employees or family members of employees of the respective corporations were covered under the respective automobile insurance policies issued to the corporations.  
Polzin
, 5 Ill. App. 3d at 85, 283 N.E.2d at 326; 
Economy
, 246 Ill. App. 3d at 392, 615 N.E.2d at 1291.  Plaintiff argues that because Hillcrest is a "living assistance" residence it is not a "typical corporation" like those in 
Polzin
 and 
Economy
 and that Santaniello's reliance on Hillcrest for his personal care makes his relationship with the organization unlike the relationship of the individuals seeking insurance in these cases.  However, as we discussed earlier, the record demonstrates that Hillcrest is still a corporation and Santaniello's relationship with it is one of a private citizen paying for and receiving services, albeit living services, and not one unique enough to preclude this court from applying existing case law in this situation.  As the law states that corporations do not have "family members" (
Economy
, 246 Ill. App. 3d at 392, 615 N.E.2d at 1294) and as the policy unambiguously does not insure the residents of Hillcrest but only the corporation and its vehicle, this court would be rewriting the contract between the parties if it chose to extend coverage to Santaniello under the facts of this case.  Therefore, we uphold the trial court's ruling dismissing plaintiff's complaint with prejudice for failure to state a cause of action.

For the foregoing reasons, we affirm the trial court's dismissal of plaintiff's complaint for declaratory judgment against defendant seeking uninsured motorist benefits for decedent Santaniello with prejudice.

Affirmed.

COUSINS, P.J., and McNULTY, J., concur.