NOTICE

Decision filed 07/25/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0061

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| STEVEN CLAYTON, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellant, | ) Bond County. |
| | ) |
| v. | ) No. 03-L-22 |
| | ) |
| MILLERS FIRST INSURANCE | ) |
| COMPANIES, | ) Honorable |
| | ) John Knight, |
| Defendant-Appellee. | ) Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Steven Clayton, filed a declaratory judgment action against defendant, Millers First Insurance Companies, in the circuit court of Bond County. The court granted a partial summary judgment to defendant. On appeal, plaintiff raises these issues: (1) whether the trial court erred by ruling in a summary judgment that plaintiff was not a family member under the insurance policy and (2) whether defendant acted in bad faith by refusing to pay. We vacate and remand.

FACTS

On August 25, 2002, plaintiff, a minor, was a passenger in a car that was involved in a one-car accident. The driver was also a minor. Plaintiff filed suit against the minor driver and the owner of the vehicle, the minor's father. The driver's father subsequently filed for bankruptcy, and plaintiff filed an amended complaint naming the driver's mother as a defendant. The driver's mother subsequently filed for bankruptcy.

On the date of the accident, plaintiff lived with his mother, Carol Clayton, and her then-fiancé, Nick Gregory. Gregory submitted an affidavit claiming that plaintiff has lived

1

at his residence since 1998 and that he has "nurtured, cared [for], and provided for the support and upbringing of" plaintiff. Gregory stated that his relationship with plaintiff was of a "parental nature" and that it was his understanding that plaintiff was covered by the insurance policy. Gregory had automobile insurance with uninsured-motorist coverage through defendant.

On June 7, 2004, plaintiff notified defendant that he was seeking compensation under the uninsured-motorist coverage of the policy issued to Gregory. Defendant responded that plaintiff was not insured under the Gregory policy.

On July 29, 2005, plaintiff amended his complaint to add defendant. In the amended complaint, plaintiff asked for a declaratory judgment that defendant is obligated to provide uninsured-motorist coverage for plaintiff. Plaintiff also alleged that defendant acted in bad faith in declining coverage. Plaintiff alleged that at the time of the accident he was a minor child residing with Gregory and "was financially dependent upon the insured for care and support." Plaintiff claimed coverage as a family member under the uninsured-motorist provisions of the Gregory policy.

Defendant filed a motion for a summary judgment on the counts for a declaratory judgment (735 ILCS 5/2-1005 (West 2004)). Plaintiff filed a response and a cross-motion for a summary judgment. The trial court granted a summary judgment to defendant. Plaintiff appeals.

ANALYSIS

A summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2004). The review of an entry of a summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607

2

N.E.2d 1204, 1209 (1992). Specifically, the construction of an insurance policy is a question of law, which is reviewed *de novo*. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004).

The resolution of this matter calls for the application of well-worn principles of contract construction. The insurance policy is a contract and is subject to the same rules that govern the interpretation of contracts. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005). The primary objective of the court is to determine and give effect to the intent of the parties as expressed in the language of the policy. *Hobbs*, 214 Ill. 2d at 17, 823 N.E.2d at 564. On review, the court is to assume that every provision in the contract serves a purpose. *Central Illinois Light Co.*, 213 Ill. 2d at 153, 821 N.E.2d at 213. The policy is to be construed as a whole, taking into account the type of insurance provided, the nature of the risks involved, and the overall purpose served by the contract. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997).

The pertinent question in the underlying declaratory judgment action is whether plaintiff qualifies as a "family member" under the terms of the Gregory policy. Paragraph F under the "Definitions" portion of the policy provides as follows:

> "F. 'Family member' means a person related to you by blood, marriage[,] or adoption who is a resident of your household. This includes a ward or foster child."

Plaintiff contends that the definition is ambiguous. In particular, plaintiff contends that the terms "ward" and "foster child" have several different meanings. Words that are clear and unambiguous must be given their plain, ordinary, and popular meaning. *Outboard Marine Corp.*, 154 Ill. 2d at 119, 607 N.E.2d at 1217. In determining whether a policy term is ambiguous, the standard is not whether parties disagree, but whether the term is reasonably susceptible to more than one interpretation. *Valley Forge Insurance Co. v. Swiderski*

3

*Electronics, Inc.*, 223 Ill. 2d 352, 363, 860 N.E.2d 307, 314 (2006). If a word is reasonably susceptible to more than one meaning, it will be considered ambiguous and construed strictly against the drafter of the policy. *Central Illinois Light Co.*, 213 Ill. 2d at 153, 821 N.E.2d at 213. A court will not search for ambiguity where there is none. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1078 (1993). Although any terms that limit an insurer's liability will be construed in favor of coverage, this rule comes into play only if the policy is ambiguous. *Hobbs*, 214 Ill. 2d at 17, 823 N.E.2d at 564.

If an insurance policy does not define a particular term, a court should afford the term its plain and ordinary meaning. *Outboard Marine Corp.*, 154 Ill. 2d at 115, 607 N.E.2d at 1215. Dictionaries provide several definitions for the term "ward."

"Ward. *** **6.a**. *Law*. A minor or incompetent person placed under the care or protection of a guardian or court. **b.** A person under the protection or care of another. **7.** The state of being under guard; custody. **8**. The act of guarding or protecting; guardianship." The American Heritage Dictionary of the English Language 2013 (3d ed. 1992).

"Ward. *** **2:** the state of being under guard; *esp*: CUSTODY. *** **6:** a person or thing under guard, protection, or surveillance: as **a:** a minor subject to wardship, **b:** a person who by reason of incapacity (as minority or lunacy) is under the protection of a court either directly or through a guardian appointed by the court - called also *ward of court*, **c:** a person or body of persons under the protection or tutelage of a government." Miriam-Webster's Collegiate Dictionary 1331 (10th ed. 1993).

"Ward. **2. a.** *gen*. Guardianship, keeping, control. *** **b.** *spec*. Guardianship of a child, a minor, or other person legally incapable of conducting his affairs. Also, the condition of being subject to a guardian." The Oxford English Dictionary 86-87, vol.

4

VII (1933) (reprinted in 1961, 1970).

See *Valley Forge Insurance Co.*, 223 Ill. 2d at 366, 860 N.E.2d at 316 (dictionaries provide the plain and ordinary usage of terms for contract interpretation).

Defendant contends that the term "ward" is a term of legal significance. A contract term is unambiguous if it has an established and precise legal meaning. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 373, 875 N.E.2d 1082, 1091 (2007). On the other hand, there may be no requirement to satisfy the elements of a legal term if the policy does not explicitly purport to rely on or define the legal term. See *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 886 N.E.2d 976 (2008).

Defendant relies on *Rosenberg v. Zurich American Insurance Co.*, 312 Ill. App. 3d 97, 726 N.E.2d 29 (2000). In *Rosenberg*, a nursing home resident was fatally injured when he was struck by an automobile driven by an uninsured motorist. The resident's estate claimed that he was covered by the policy issued to the corporation which operated the nursing home. The court found that the policy did not insure the resident. The policy applied to "family members" only if the policyholder was an "individual." The policy form provided that the policyholder could be either a "partnership," a "corporation," or an "individual." The defendant was a corporation, not an individual, so the "family member" provision did not apply. *Rosenberg*, 312 Ill. App. 3d at 101, 726 N.E.2d at 33. Additionally, the court noted that under Illinois law a corporation cannot have family members. *Rosenberg*, 312 Ill. App. 3d at 102, 726 N.E.2d at 33.

The plaintiff argued that the defendant should not be considered a regular corporation because of its special role as a long-term care facility and that this created an ambiguity. *Rosenberg*, 312 Ill. App. 3d at 102, 726 N.E.2d at 33. The plaintiff pointed out that nursing home residents rely on the facility for the essentials of everyday life, including food and shelter. Nonetheless, the court found that the language of the policy covered "family

5

members" only when the signatory was designated as an individual and not a corporation. *Rosenberg*, 312 Ill. App. 3d at 103, 726 N.E.2d at 34.

The plaintiff then argued that the resident was a "ward" of the nursing home and, therefore, was covered under the "family member" provision. *Rosenberg*, 312 Ill. App. 3d at 106, 726 N.E.2d at 36 (citing *Carrington v. St. Paul Fire & Marine Insurance Co.*, 169 Wis. 2d 211, 485 N.W.2d 267 (1992), and *Hartman v. Insurance Co. of North America*, 106 Mich. App. 731, 308 N.W.2d 625 (1981)). The court found no reason to override the unambiguous declaration that the family member provision applied only if a policyholder was an individual. The court responded as follows:

"A ward has been defined in Illinois as ' "[a] person, especially an infant, placed by authority of law under the care of a guardian" ' (*In re Jennings*, 68 Ill. 2d 125, 132, 368 N.E.2d 864, 868 (1977), quoting Black's Law Dictionary (4th ed. 1951)) or, comparably, ' "the person over whom or over whose property a guardian is appointed" ' (*Jennings*, 68 Ill. 2d at 132-33, 368 N.E.2d at 868, quoting 39 C.J.S. *Guardian & Ward*, §2 (1976))." *Rosenberg*, 312 Ill. App. 3d at 106, 726 N.E.2d at 36.

The court found no ambiguity because the resident "was not legally disabled, in his minority, or in any way under the guardianship of another individual or entity, let alone the State of Illinois, so as to meet the legal definition of a ward." *Rosenberg*, 312 Ill. App. 3d at 106, 726 N.E.2d at 36 (citing *In re Jennings*, 68 Ill. 2d at 132-33, 368 N.E.2d at 868). In the end, the policy contained no ambiguity calling for a possible application of the family member provision. The court concluded, "[P]laintiff has failed to show the policy in dispute was ambiguous in not including 'family member' coverage to Hillcrest residents, meaning even if Santaniello could theoretically be considered a ward of Hillcrest, the policy would not insure him in this case." *Rosenberg*, 312 Ill. App. 3d at 106, 726 N.E.2d at 36.

6

*Rosenberg* is of little instruction to the case at hand. The issue in *Rosenberg* was not whether the definition of the status of the plaintiff, as a ward, was ambiguous, but whether the status of the plaintiff was so certain that it raised a latent ambiguity in the definition of the status of the policyholder as a corporation. The court found that the plaintiff's status was not so certain because he did not "meet the legal definition of a ward." *Rosenberg*, 312 Ill. App. 3d at 106, 726 N.E.2d at 36. *Rosenberg* found no need to address whether the term "ward" was ambiguous because the resident was not legally disabled or, like plaintiff in the case at hand, "in his minority." *Rosenberg*, 312 Ill. App. 3d at 106, 726 N.E.2d at 36; *cf. Carrington*, 169 Wis. 2d 211, 485 N.W.2d 267.

The legal definition of the term "ward" used in *Rosenberg* had been provided in *In re Jennings*, 68 Ill. 2d 125, 133, 368 N.E.2d 864, 868 (1977). In *In re Jennings*, a grandmother filed a petition seeking the termination of the rights of a court-appointed guardian and the revocation of consents to adoption signed by her daughter. The grandmother argued that the consents to adoption were invalid because the trial court had failed to adjudge the grandchildren "wards of the court" pursuant to the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 701-1 *et seq.*). *In re Jennings*, 68 Ill. 2d at 131, 368 N.E.2d at 867. Instead, the trial court had declared the children to be "dependent." *In re Jennings*, 68 Ill. 2d at 132, 368 N.E.2d at 868. The Illinois Supreme Court found the trial court language sufficient:

"We do not quarrel with the proposition that in a special statutory proceeding an order must contain the jurisdictional findings prescribed by statute. (*Zook v. Spannaus*, 34 Ill. 2d 612[, 217 N.E.2d 789 (1966)]; *In re Bartha*, 87 Ill. App. 2d 263[, 230 N.E.2d 886 (1967)]; *In re Barr*, 37 Ill. App. 3d 10[, 344 N.E.2d 517 (1976)].) However, the term 'ward of the court' as used in the statute has no significance apart from the legal status about which the statute is concerned. This same status can be acceptably described in other language. Blacks Law Dictionary (4th ed. 1951) defines

7

'ward' as: 'A person, especially an infant, placed by authority of law under the care of a guardian.' In 39 C.J.S., *Guardian and Ward*, sec. 2 (1976), we find the following:

'A *ward* is the person over whom or over whose property a guardian is appointed. With reference to minors, a ward is an infant placed by authority of law under the care of a guardian, and such an infant is a ward of the court appointing the guardian.' (Footnotes omitted.)

The statute is concerned with the finding and adjudication of a particular status. It does not require that the order and proceedings be ritualized to the extent that language other than the words 'ward of the court' which describes the same status may not be used.

If the accepted definitions of 'ward' referred to above be substituted for that word in section 4-8[,] it becomes readily apparent that the findings and adjudication in the order of the trial court comply with the jurisdictional requirements of the statute." *In re Jennings*, 68 Ill. 2d at 132-33, 368 N.E.2d at 868.

Once read in context, it becomes apparent that the extrapolation of the definition provided in *In re Jennings* to the case at hand is problematic. First, *In re Jennings* is discussing the phrase "ward of the court." Second, *In re Jennings* is addressing that term "as used in the statute," the Juvenile Court Act. The insurance policy makes no reference to, and is not limited to, a statutory or "legal definition" of a ward. *Rosenberg*, 312 Ill. App. 3d at 106, 726 N.E.2d at 36 (citing *In re Jennings*, 68 Ill. 2d at 132-33, 368 N.E.2d at 868).

The claim that the term "ward" is a precise legal term is belied by *Parks v. Kownacki*, 305 Ill. App. 3d 449, 461, 711 N.E.2d 1208, 1216 (1999), *rev'd on other grounds*, 193 Ill. 2d 164, 737 N.E.2d 287 (2000). In *Parks*, Illinois recognized that the term "ward" could be used to describe a person despite no prior adjudication of that status. In *Parks*, an adult woman sued a priest, claiming she had been sexually abused as a child. The priest had

8

obtained permission from the plaintiff's parents for her to move with him to an out-of-town assignment in order for her to attend a larger high school. The church claimed that it owed the plaintiff no duty of care. The appellate court found as follows:

"We conclude that both the church and the Diocese can be responsible because of the guardian/ward relationship created when Father Kownacki was allowed to keep a teenage girl in the rectory as his housekeeper, to send her to school far from her parents and family, and to, at a minimum, exercise all the control over her that a legal guardian would be allowed to exercise. A fiduciary duty exists between a guardian and a ward. See *In re Estate of Osborn*, 128 Ill. App. 3d 453, 470 N.E.2d 1114 (1984). A caretaker of a child has a duty to protect the child from harm. See *People v. Watson*, 103 Ill. App. 3d 992, 431 N.E.2d 1350 (1982). The duty to protect from harm certainly encompasses a duty to refrain from harming and to restrain others within one's control from harming. Under the facts alleged in this case, a duty of care exists because of the guardian/ward relationship." *Parks*, 305 Ill. App. 3d at 461, 711 N.E.2d at 1216.

Although the supreme court reversed the appellate court decision on other grounds, it did state that when the priest "accepted the responsibility of plaintiff's care and education, he took on the role of her guardian, even though he was not given that title by a court." *Parks*, 193 Ill. 2d at 169, 737 N.E.2d at 290.

As in *Parks*, the policyholder's relationship to plaintiff could be seen as a "guardian/ward relationship" (*Parks*, 305 Ill. App. 3d at 461, 711 N.E.2d at 1216). Plaintiff alleged that he was a minor, resided with the policyholder, and was financially dependant on the policyholder for care and support. The policyholder described his relationship with plaintiff as having a parental nature.

Although no Illinois court has directly addressed the issue of what constitutes a ward

for purposes of an insurance policy held by an individual, the federal courts provide guidance on the matter. *Houston v. National General Insurance Co.*, 817 F.2d 83, 84 (10th Cir. 1987). In *Houston*, the mother of the policyholder's grandchild was living with the policyholder at the time of an automobile accident. The plaintiff asserted she was covered as a family member. The insurance policy defined "family member" as a " 'person related to you by blood, marriage[,] or adoption who is a resident of your household. This includes a ward or foster child.' " *Houston*, 817 F.2d at 84. The Tenth Circuit found that ambiguity in the term "ward" precluded a summary judgment for the insurer. The court stated as follows:

> "The insurance policy does not define 'ward' or expressly limit coverage to those situations where 'ward' status is conferred by legal appointment or placement. Under these circumstances, '[t]he court may look to dictionary definitions of the ambiguous term, and if there is a range of reasonable meanings, the court must apply the meaning which provides the most coverage for the insured.' *Poland v. Martin*, 761 F.2d 546, 548 (9th Cir. 1985). Consequently, we conclude that 'ward' is ambiguous and should not be restricted to a technical, legal definition including only a person on behalf of whom a legal guardian has been appointed by a court of competent jurisdiction." *Houston*, 817 F.2d at 85.

Plaintiff contends that defendant's denial of coverage was in bad faith and vexatious. 215 ILCS 5/155 (West 2002). Although the terms of the policy are ambiguous, defendant presents a *bona fide* dispute regarding coverage. See *Liberty Mutual Insurance Co. v. American Home Assurance Co.*, 368 Ill. App. 3d 948, 962, 858 N.E.2d 530, 542 (2006). The trial court correctly denied the plea for sanctions.

Because this court finds that plaintiff sufficiently supported a claim that he was a family member under the policy as a ward of Gregory, we need not address plaintiff's assertion that he was also a foster child of Gregory.

CONCLUSION

Accordingly, the order of the circuit court entering a summary judgment in favor of defendant is hereby vacated and the matter is remanded.

Vacated; cause remanded.

WELCH and SPOMER, JJ., concur.

NO. 5-07-0061

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| STEVEN CLAYTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Bond County. |
| | ) | |
| v. | ) | No. 03-L-22 |
| | ) | |
| MILLERS FIRST INSURANCE | ) | |
| COMPANIES, | ) | Honorable |
| | ) | John Knight, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Opinion Filed**:      July 25, 2008

**Justices**:      Honorable Richard P. Goldenhersh, J.

                    Honorable Thomas M. Welch, J.
                    Honorable Stephen L. Spomer, J.
                    Concur

**Attorney**
**for**
**Appellant**
     Patrick R. Foley, Williams, Caponi, Foley & Eckert, PC, 30 East Main Street, Belleville, IL 62220

**Attorney**
**for**
**Appellee**
     Michael J. Bedesky, Reed, Armstrong, Gorman, Mudge & Morrissey, P.C., 115 North Buchanan, P. O. Box 368, Edwardsville, IL 62025